**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SUPREME CHICKEN, INC.,<br><br>*Debtor*. | )<br>)<br>) Chapter 11<br>)<br>) Case No. 10-77253 (REG)<br>)<br>)<br>)<br>)<br>) |

**3073 CORP'S (A) JOINDER TO EMERGENCY**
**APPLICATION OF STATE COURT RECEIVER FOR (1) RELIEF**
**FROM THE AUTOMATIC STAY IN CONNECTION WITH ACTION**
**ENTITLED IN RE: SUPREME CHICKEN, UNDER CASE NO. 8-10-77253 (REG)**
**AND (2) EXCUSING RECEIVER FROM THE OBLIGATION TO TURN**
**OVER ANY RENTS AND PROFITS TO BE COLLECTED BY HIM**
**AS RECEIVER, AND (B) RESPONSE TO DEBTOR'S OBJECTION TO SAME**

      3073 Corp, by and through its undersigned counsel, submits this (A) joinder (the "<u>Joinder</u>") of 3073 Corp. to Emergency Application Of State Court Receiver For (1) Relief From The Automatic Stay In Connection With Action Entitled In Re: Supreme Chicken, Under Case No. 8-10-77253 (REG) And (2) Excusing Receiver From The Obligation To Turn Over Any Rents And Profits To Be Collected By Him As Receiver (the "<u>Lift-Stay Motion</u>") [Docket No. 16], and (B) response (the "<u>Response</u>") to the above-captioned debtor's (the "<u>Debtor</u>") objection to the Lift-Stay Motion (the "<u>Objection</u>") [Docket No. 19].  For its Joinder, 3073 Corp hereby adopts the arguments, allegations and requested relief raised and sought by the state court-appointed receiver (the "<u>Receiver</u>"), and respectfully represents as follows:

<u>**JOINDER**</u>

      1.    Cause exists to lift the automatic stay in this case.  First, the Lift-Stay Motion should be granted because it was filed in bad faith.  Further, the stay should be lifted because the

Debtor lacks equity in the Subject Property[1] and because 3073 Corp is not adequately protected. Finally, the Receiver should be left in place because it would be in the best interest of all creditors in this case.

2.    Although the Bankruptcy Code imposes a broad stay of actions against a debtor, the "automatic stay is not meant to be absolute." *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing section 362(d) of the Bankruptcy Code); 11 U.S.C. § 362(d). Congress specifically set forth grounds for relief from the stay in, among others, section 362(d)(1).

**Section 362(d)(1)**

3.    Section 362(d)(a) provides, in relevant part, that

the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]

11 U.S.C. § 362(d)(1).

4.    Except for adequate protection, "cause" is not defined by section 362(d)(1). *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d. Cir. 2002). It is well established that cause is determined on a case-by-case basis, taking into account all of the circumstances of each case. *See e.g., Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734, 737-38 (6th Cir. 1994) (internal citations omitted). "Neither the statute nor the legislative history defines the term "for cause" and the legislative history gives only very general guidance." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997) (citing *In re Sonnax Industries*, 907 F.2d 1280, 1285 (2d Cir.1990)). Findings of bad faith and/or lack of adequate protection are, among others,

---

[1] All capitalized terms used herein but not defined herein shall have the meaning ascribed to them in the Lift-Stay Motion.

grounds to lift the automatic stay. *In re 234-6 West 22ns St.* 214 B.R. at 760 (bad faith); 11

U.S.C. § 362(d)(1) ("lack of adequate protection").

**A.      The Stay Should Be Lifted for Cause and Lack of Adequate Protection**

5.      The automatic stay should be lifted for "cause" based on a bad faith filing and

because the Debtor has little or no equity in the Subject Property and 3073 Corp lacks adequate

protection of its secured interest in such property.

**Bad Faith Filing Supports a Finding of "Cause"**

6.      This case was filed in bad faith and is part of a prolonged series of pre-bankruptcy

maneuvers taken by the Debtor to hinder the enforcement of 3073 Corp's state law rights and the

Receiver's discharge of his state court duties.  This filing reflects no genuine attempt to

reorganize.

7.      Other courts in this and other circuits have granted relief from the stay after

finding that the case was not filed in good faith. *In re 652 West 160th LLC.*, 330 B.R. 455, 465 -

466 (Bankr. S.D.N.Y. 2005) (citing *Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Surety

Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734 (6th Cir. 1994); *Barclays-

American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d

1023 (11th Cir. 1989); *Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196 (9th Cir.

BAP 1996); 3 COLLIER ON BANKRUPTCY ¶ 362.07[6] (15th ed. 2005)); *see also In re Spectee

Group, Inc.*, 185 B.R. 146 (Bankr. S.D.N.Y. 1995) (awarding sanctions where single asset real

estate chapter 11 case was filed in bad faith); *In re 234-6 West 22nd St. Corp.*, 214 B.R. at 760

("[A] debtor shows its bad faith when it uses bankruptcy protection for risk free speculation in

the single [real estate] asset.").  .

8.      The Second Circuit Court of Appeals has set forth the non-exclusive elements for

a finding of a bad faith filing.  They include:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir.1997); *cf. In re 652 West 160th LLC.*, 330 B.R. at 466.

9.     Here, the each of the above *C-TC* factors supports the conclusion that this case was filed in bad faith.

*The Debtor Has Only One Asset*

10.     The Debtor admits through its petition and in its Objection that this is a single asset real estate case.  Accordingly, this first *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor Has Few Unsecured Creditors Who Are Not Insiders*

11.     In the Debtor's schedules, the Debtor admits that it has few unsecured holders of debt of the Debtor that are not insiders.  Those claims, to the extent they are legitimate claims against this estate, are *de minimis* in comparison to the claim of the Debtor's principal debt, which is owed to 3073 Corp.  First, the Debtor admittedly has only four unsecured creditors, all or most of which appear to hold debt related to the Night Flight, Inc. entity (as they are linen, food and beverage related).  The Night Flight entity is owned by the Debtor's principal, Angaad Sooknandan.  It is not clear why such claims are included in this petition, but if they are removed

it would appear that there are no other creditors involved in this case.  Even if those claims are taken into account, they total only about $30,000.  Such amount is negligible in comparison to the single secured claim in the amount of approximately $900,000 around which this case is based.  Accordingly, this second *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor's One Purported Asset is the Subject of a Foreclosure Action*

12.     It is undisputed that the foreclosure action is pending concerning the Debtor's sole purported asset.  It is further undisputed that the Receiver has already been appointed and commenced his duties in this case.  Accordingly, this third *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor's Financial Condition is, In Essence, A Two Party Dispute Which Can Be Resolved In the Pending State Foreclosure Action*

13.     As discussed, the Debtor admits that there are no other creditors except 3073 Corp and what appears to be creditors of Mr. Sooknandan's other business.  Accordingly, this case is merely a two-party dispute.  The two-party dispute here can best be resolved fully and finally in the foreclosure action.  For example, as noted herein, the Receiver has already been appointed and has been diligently trying to carry out his duties.  But for the intentional interference by the Debtor and its principal, the Receiver would have made substantial progress in taking complete control of the finances and maintenance of the Subject Property.

14.     As a pure two-party dispute, all rights and issues with the Subject Property will be resolved fully and finally in the foreclosure action.  Despite the Debtor's obstructionist tactics, the Receiver has been making progress to resolve the mismanagement and cash flow issues with the Subject Property.  Accordingly, all material issues concerning the Debtor will be resolved in the foreclosure action.  Therefore, this fourth *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Timing Of The Debtor's Filing Evidences An Intent To Delay Or Frustrate The Legitimate Efforts Of The Debtor's Secured Creditors To Enforce Their Rights*

15.     This case was not filed for any legitimate restructuring and the history supports that conclusion.  Since the foreclosure action commenced, the Debtor and its principals have tried consistently to thwart the Receiver and the valid state court orders, at least one of which the Debtor consented to.  Instead this case was filed simply to gain the protection of the automatic stay for a long enough period to further avoid the Debtor's civil arrest and hinder its secured creditor from exercising its state law remedies.  That includes the now advanced foreclosure proceedings and Receiver's oversight and management of the Subject Property.

16.     Specifically, the Debtor has successfully thwarted the secured creditors rights under the mortgage since 2008.  Further, the Receiver's efforts to take control of the Subject Property have been continually hindered by the Debtor since the Receiver's appointment in July 2009.  Since his appointment, the Debtor has consistently failed to turn over the records, documents and deposits as required by the Receiver's appointment order.  After months of non-compliance, the Receiver was forced to move for a contempt finding.  In response to the contempt motion, the Debtor consented to the entry of an order requiring it to turnover various monies and documents, and commence payment of certain rents.

17.     The consent order turned out to be another mechanism for hindering the secured creditor's and Receiver's legitimate efforts to enforce rights under state court orders and the mortgage.  Notwithstanding the Debtor's consent to such order, the Debtor again hindered the Receiver's efforts by refusing to comply with the terms of such order.  As a result, Honorable Loren Baily-Schiffman found the Debtor's principal in contempt and issued an extraordinary bench warrant for the Debtor's principal's arrest.  Following the issuance of the bench warrant, the Debtor again attempted to avoid its obligations and the consequences of the state court ruling.

This time it successfully contacted a state elected official to aid the Debtor's principal in avoiding the consequences of the contempt finding, including his arrest and eviction.

18.    Now, by its Objection and as addressed below, the Debtor is trying yet again to revisit the state-court proceedings and the orders that issued therein.  For example, after consenting to a $7,500 per month use and occupancy payment for the first floor of the Subject Premises, the Debtor now claims such amount is "above market rent" and proposes to pay $4,000 per month  Taken together, the Debtor's efforts manifest a blatant attempt over the last two to three years to hinder the valid efforts of the secured creditor and the Receiver to enforce state law rights, remedies and/or duties.

19.    Further, just a quick review of the docket sheet as of October 4, 2010 indicates that the Debtor has not taken any of the steps typical of a chapter 11 case undercutting any claim that this is a legitimate restructuring.  Almost three weeks into the case, the Debtor has:

- not sought the retention of an attorney as required by the Bankruptcy Code;
- not sought any typical first day relief;
- not filed complete schedules;
- not sought the retention of any other professionals;
- not sought to use 3073 Corp's cash collateral;
- not filed a sale or bidding procedures motion; and
- not stayed current on its obligations.

20.    This history supports a finding that the present case was filed in an attempt to thwart a resolution of the matters in the foreclosure action and not for any legitimate restructuring purpose.  Accordingly, this fifth *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor Has Little Or No Cash Flow*

21.    The Debtor appears to have little cash flow.  What cash flow it does have appears to be insufficient to meet its mortgage, carrying charges on the Subject Property and the required maintenance.  Based on the Debtor's own calculations, it cannot satisfy even the monthly

mortgage payments.  Based on the $4,000 it proposes to charge Night Flight, the insider-controlled first floor tenant, plus the $1,500 per month it claims to collect from the accountant on the second floor, the Debtor would be $800 short of the $6,300 due under the mortgage monthly. These rents fall far short of the total amounts needed to carry the property, including the debt service, real estate taxes, insurance, water, sewer, power, gas, and the significant maintenance that is currently required.  In fact, the Debtor admits that it needs the funds that the <u>Receiver</u>, not the <u>Debtor</u>, collected to meet its obligations, plus it claims to need to have the mortgage modified.  In short, the Debtor is simply speculating on its ability to operate this property within its income and management capability.  Accordingly, this sixth *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor Cannot Meet Current Expenses*

22.    As noted above, the Debtor does not appear to have adequate income to operate and maintain the Subject Property.  Accordingly, this seventh *C-TC* factor supports a finding of bad faith and cause to lift the stay.

*The Debtor Has No Employees.*

23.    The Debtor does not appear to have any employees.  Accordingly, this eighth *C-TC* factor supports a finding of bad faith and cause to lift the stay.  The *C-TC* factors overwhelmingly support a finding of bad faith in this case and a finding of cause to lift the stay.

**SARE Filing**

24.    Finally, this is a single asset real estate ("<u>SARE</u>") case.  SARE cases are often found to fit into classic bad faith filings subject to dismissal or lifting of the stay.  *See, In re C-TC 9th Ave P'ship*, 113 F.3d 1304, 1310 (dismissing single asset real estate case pursuant to § 1112(b)); *see also generally In re 234-6 West 22nd St. Corp.*, 214 B.R. 234 (lifting the automatic stay after a finding of bad faith).

25.     The Bankruptcy Code does not permit a debtor to speculate in real estate at the expense of secured lenders.  11 U.S.C. §362(d)(3); *see also In re 234-6 West 22nd St. Corp.*, 214 B.R. at 760 ("[A] debtor shows its bad faith when it uses bankruptcy protection for risk free speculation in the single [real estate] asset.").  As in *234-6 West 22nd St.*, the Debtor here appears to be "gambling" on hope that it will collect higher rents, modify its mortgage and otherwise be able to meet its obligations going forward.  *Id.* (court noting that the debtor was "gambling" with creditor's money).  The Debtor's gamble here should not be permitted to continue any further, particularly after the Receiver's substantial time and cost involved in trying to regain control of the Subject Property in state court and the Debtor's contemptuous efforts to thwart the Receiver's duties.

26.     For all of the foregoing reasons, the Court should find that this case was filed in bad faith and lift the automatic stay for "cause."

**The Stay Should be Lifted For Lack Debtor Equity and Lack of Adequate Protection**

27.     Alternatively, the stay should be lifted because the Debtor lacks equity in the Subject Property and 3073 Corp lacks adequate protection of its secured interest.  First, as of September 30, 2010, 3073 Corp's claim secured by the Subject Property totals more than $900,000.  The Debtor claims the property is worth approximately $850,000.  If the Debtor is correct, it has no equity in the property.

28.     Next, 3073 Corp lacks adequate protection of its interest in the property.  No principal or interest payments have been made postpetition (or for years), escrow advances are in arrears, and there is no heating system for the 2nd and 3rd floor of the building.  The problem with the heating system is particularly grave since under New York City law, heat must be provided when the outside temperature falls below 55 degrees.  Accordingly, based on the temperature in recent days, the Debtor has already been out of compliance with applicable law.

29.    The Debtor's inability to properly maintain the Subject Property threatens a decline in the value of the property.  The imposition of the stay is exacerbating this threat to the extent that the stay inhibits the Receiver's efforts to continue to operate and maintain the property.  "The secured creditor lacks adequate protection if the value of its collateral is declining as a result of the stay.  It must, therefore, prove . . . the <u>threat</u> of a decline in order to establish a prima facie case.  Such 'threats' include the failure to maintain property insurance or the failure to keep the property in good state of repair." *In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994) (emphasis added); *see also, In re Sun Valley Ranches, Inc.*, 823 F. 2d 1373, 1376 (9th Cir. 1987); *In re Marion Street Partnership*, 108 B. R. 218, 225 (Bankr. D. Minn. 1989); *In re Raymond*, 99 B.R. 819, 821-22 (Bankr. S. D. Ohio 1989); *In re Planned Sys., Inc.*, 78 B.R. at 862-63; *In re Borchers*, 45 B.R. 69, 72 (Bankr. D. Iowa 1984); *In re Irving A. Horns Farms Inc.*, 42 B.R. 832, 837 (Bankr. D. Iowa 1984); *In re Brown*, 78 B.R. 499, 503 (Bankr. S. D. Ohio 1987).   Here, the operation of the building without adequate heating will likely cause damage to the building causing it to decline in value.  Accordingly, the threat of decline constitutes cause to lift the stay in this case.

30.    Other courts in and outside of this circuit have also held that a failure to make post-petition payments can provide a basis to lift the stay.  "Without quantifying the decline in value, the creditor can often establish its prima facie case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments." *In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994), citing, *In re Dacon Bolingbrook Associates, L.P.*, 153 B.R. 204, 208 (N.D. Ill. 1993) (continued failure to tender periodic payments);  *In re Blackwell*, 162 B.R. 117, 120 (E.D. Pa. 1993) (debtor made only eight post-petition mortgage payments in three years); *In re Hinchliffe*, 164 B.R. 45, 49 (Bankr. E.D. Pa. 1994); (failure to make any post-petition payments); *In re Ocasio*, 97 B.R. 825, 826 (Bankr. E.D. Pa. 1989) (same);  *Povident Mutual Life Ins. Co v. Winslow Center Associates (In re Winslow Center*

*Associates)*, 32 B.R. 685, 687 (Bankr. E.D. Pa. 1983) (failure to make monthly mortgage and tax payments).  The Debtor has failed to make its periodic principal or interest payments on its mortgage (which failure has continued for years), it has failed to stay current on the associated escrow payments, and it has failed to maintain the Subject Property.  Such failures support a finding of lack of adequate protection.

31.     As a result of such non-payment and other failures in the financial responsibilities of the Debtor previously stated herein, 3073 Corp has incurred and will continue to incur erosion in the value of its collateral while the stay is in effect.  "Even when a slight equity cushion exists, this does not constitute adequate protection where post-petition interest is accruing, and the debtor is not able to pay expenses as they come due."  *See, In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749 Bankr. S.D.N.Y. 2004); *see also, In re Fortune Smooth (U.S.) Ltd.*, 1993 WL 261478 at * 6 (Bankr. S.D.N.Y. July 6, 1993) (lifting the stay "for cause," notwithstanding an equity cushion).  As a consequence of the shrinking value of the Subject Property, the failure to lift the automatic stay with respect to the Subject Property will further threaten 3073 Corp's potential recovery in this case.  To the extent that any other subordinate creditors of the Debtor exist, the continuation of the stay threatens the recovery for those creditors as well.  Accordingly, it is in the best interest of 3073 Corp and all creditors of this estate to grant relief from the automatic stay pursuant to § 362(d)(1).

32.     As discussed above, the Debtor's acts and omissions are rife with signs of bad faith.  Accordingly, 3073 Corp hereby reserves its right to move at a later time, if appropriate, for conversion, dismissal, abstention or other action based on bad faith or any other grounds it deems necessary to provide sufficient relief to protect its interests.

**The Receiver Should Be Left In Place**

33.     The Receiver should also be left in place in this case.  For all of the reasons set forth in the Lift-Stay Motion and those herein, creditors are better served by keeping the

Receiver in place.  The best proof of that statement is that, despite the months and months of

obstructionism by the Debtor, the Receiver has still able to amass more than $50,000 in

collections, which the Debtor (unable to collect it itself) admits it needs for a successful

reorganization.  There is simply no reason to believe that the Debtor will be able to manage this

building as successfully as the Receiver.  Therefore, creditors will be better served by the

continuation of the Receiver's appointment to allow it to do, once and for all, what it was

directed to do by the state court, but which it has been unable to do completely because of the

Debtor's improper and contemptuous conduct.

34.      For all of the foregoing reasons, 3073 Corp joins in the Lift-Stay Motion and the

relief requested therein.

## RESPONSE TO OBJECTION

35.      The Objection is little more than a request to this Court to acquiesce to the

Debtor's tireless efforts to thwart the state court proceedings and the bona fide efforts of the

Receiver to bring the Subject Property under control.  The Objection states that bad faith

arguments in the Lift-Stay Motion are not supported by evidence.  However, the state court

pleadings, including the specific findings of Honorable Loren Baily-Schiffman belie this

statement.  A court's contempt finding amount to per se proof of bad faith.  Further, the pending

foreclosure matter is undisputed and, again, supports a finding of bad faith.  Finally, all of the *C-TC* factors support a finding of bad faith.  Accordingly, the Debtor's argument regarding lack of

support for determination of bad faith is simply disingenuous.

36.      The Debtor also claims that the Court should not hold a mini confirmation hearing

at this point in this case.  A court may dismiss a case or lift the stay where it was filed in bad

faith.  Such a disposition does not amount to a mini confirmation hearing, nor would one be

appropriate or warranted in a case like this.  Bad faith filed cases like this one should never

proceed to that point.

37.     Finally, the Debtor claims it is "confident" that it will have sufficient income to fund a successful reorganization.  Taking that statement in the best light, the Debtor is as optimistic as every other chapter 11 debtor.  However, that does not mean that this Court should permit it to gamble with 3073 Corp's eroding collateral.  This is particularly true considering the prolonged and contemptuous obstructionism, and inept management exhibited by the Debtor and its principal since 2008, and since July 2009 before Judge Baily-Schiffman.

38.     For all of the foregoing reasons, the Court should grant the Lift-Stay Motion and overrule the Objection and grant such other and further relief as is just and proper.

LYNCH & ASSOCIATES

Dated: October 4, 2010
       New York, New York

By: /s/ Gary O. Ravert                    
    H. Michael Lynch
    Gary O. Ravert (Of Counsel)
    462 Seventh Avenue, 12th Floor
    New York, New York 10018
    Tel: (212) 683-4141
    Fax: (212) 683-2669

*Attorneys for 3073 Corp*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| ) | |
| In re: ) | Chapter 11 |
| ) | |
| SUPREME CHICKEN, INC., ) | Case No. 10-77253 (REG) |
| ) | |
| *Debtor.* ) | |
| ) | |
| ) | |
| ) | |

## CERTIFICATE OF SERVICE

1.      I, Gary O. Ravert, am not a party to the above-captioned action, am over 18 years

of age, and reside in Brooklyn, New York.

2.      On October 4, 2010, by the means indicated below, I served each of the entities

on the Service List below with a true and correct copy of *3073 Corp's (A) Joinder To Emergency*

*Application Of State Court Receiver For (1) Relief From The Automatic Stay In Connection With*

*Action Entitled In Re: Supreme Chicken, Under Case No. 8-10-77253 (Reg) And (2) Excusing*

*Receiver From The Obligation To Turn Over Any Rents And Profits To Be Collected By Him As*

*Receiver, And (B) Response To Debtor's Objection To Same.*

Dated: October 4 2010                          LYNCH & ASSOCIATES
        New York, New York

                                               By: /s/ Gary O. Ravert
                                                   H. Michael Lynch
                                                   Gary O. Ravert (Of Counsel)
                                                   462 Seventh Avenue, 12th Floor
                                                   New York, New York 10018
                                                   Tel: (212) 683-4141
                                                   Fax: (212) 683-2669

                                               *Attorneys for 3073 Corp*

**<u>SERVICE LIST</u>**

Tarter Krinsky & Drogin LLP (Via Fax: 212-216-8001)
1350 Broadway
11th Floor
New York, NY 10018
Attn: Scott Markowitz

United States Trustee (Via Fax: 631-715-7777)
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722-4437

Weinig Saltiel, LLP (Via Fax:  718-596-7641)
26 Court Street, Suite 502
Brooklyn, NY 11242
Attn:  Jeffrey Saltiel